UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN LABELLE,                    )
            PLAINTIFF,            )
                                 )        NO. 2:17-CV-212
v.                                )
                                 )        HONORABLE PAUL L. MALONEY
CLEVELAND CLIFFS, INC.,           )
            DEFENDANT.            )
_____)

## OPINION

Plaintiff Kevin LaBelle alleges that his employer, Cleveland Cliffs, violated the Family and Medical Leave Act, both by interfering with his ability to take leave and by retaliating against him for using FMLA. He also claims that Cliffs violated Michigan's Persons with Disabilities Civil Rights Act. The matter is now before the Court on Cliffs' motion for summary judgment. Because LaBelle has failed to create a genuine dispute of fact as to either claim, the Court will grant Cliffs' motion and enter judgment.

## I.    BACKGROUND

Kevin LaBelle worked as a quality control lab technician for Cleveland Cliffs' mining operation at the Tilden Mine in Northern Michigan for more than ten years. (ECF No. 14-1 at PageID.78.) As a quality control technician, his job duties included standing stationary at his work space and extending his arms out in front of him to weigh samples of mined materials.

Beginning in 2012, LaBelle developed some medical problems. In April, at the age of 34, he had his left hip replaced because of avascular necrosis—the deterioration of bone

1

tissue, which resulted from a lack of blood flow to his hip joint. (PageID.79.) Because of his condition, he was forced to forego many activities he enjoyed including softball, basketball, and "even golf for a while." (*Id.*) It was especially painful for LaBelle to give up golfing, because it had been a hobby that he had enjoyed since he was a child. (*Id.*)

By 2016, LaBelle's health problems were affecting his work performance. During a disciplinary counseling session, he explained that he was missing work because of pain in his shoulders, which had also developed avascular necrosis. (ECF No. 16; 16-5.) When Cliffs management learned that LaBelle's medical condition was causing his attendance problems, they recommended that he "check into" FMLA leave. (*Id.*)

LaBelle applied for FMLA leave on May 4, 2016, but Cliffs denied his application because the doctor who had examined him did not indicate that he had a serious health condition that would qualify under the Act. (ECF No. 15-2; 15-3.) As Cliffs' Human Resources Representative explained in her letter to LaBelle, the information provided did not show that he would be incapacitated for more than three calendar days at a time, or that his condition was of a chronic nature that would require at least two treatments per year. (*Id.*) But a few months later, LaBelle did secure intermittent FMLA leave when his doctor certified that he suffered from a chronic health condition that required treatment once every three to four months and that he would suffer "episodic flareups" that would prevent him from working approximately once per month for a span of three days at a time. (ECF No. 15 at PageID.135.)

Over the next year, LaBelle used his leave in ways that any employer would find suspicious. And indeed, Scott Rasmussen, the Area Manager of Plant Operations at the

Tilden Mine began noticing that LaBelle had a habit of using his intermittent FMLA leave to coincide with weekends, scheduled days off and vacation days. For example, LaBelle used intermittent FMLA leave to bridge a three-day period, for which he had scheduled vacation before and after, resulting in his being absent from work between March 16 and April 5, 2017.  Later, in arbitration, Plaintiff admitted that he strategically timed his FMLA leave to extend his time off from weekends, scheduled off days and vacation days. (ECF No. 14-1 at PageID.84.)

Cliffs also became aware in the summer of 2017 that LaBelle had begun utilizing his intermittent FMLA for shifts that conflicted with his weekly golf league. (ECF No. 16 at PageID.156.)   On two such occasions, Defendant hired a private investigator to surveil Plaintiff while he golfed. (*Id.*) Each time, the investigator recorded Plaintiff playing golf, swinging his golf club without issue, and walking the course without impairment. (*Id.* at PageID.156–57.)

After twice recording LaBelle golfing while using intermittent FMLA leave, Cliffs confronted him and issued a Disciplinary Action Notice. (ECF No. 16-4.) He was notified about suspected leave fraud and placed on paid leave. (*Id.*) Cliffs then held a hearing, in which Plaintiff participated and read a statement explaining his use of FMLA leave. He stated in part:

> When using my FMLA days, I often attached them to a weekend in order to receive the most time for relief from the repetitious work that creates the pain. **I was often open with fellow crew members and other lab employees on days that I would not be at work, to give them a prior heads up.**
>
> I felt the entire time that they were **my days to use as I wanted, since I suffer from shoulder pain every day.** At no time during the days I used FMLA was I

trying to hide what I was doing or sneak around, because I did not feel nor had I ever been told that I was doing anything wrong. I never had any idea I was putting my job in jeopardy [due] to when I utilized my three days per month of FMLA.

(ECF No. 16-5 (emphasis added).)

After the hearing, Defendant's decisionmakers convened and determined that they could not reconcile Plaintiff's ability to golf with his inability to work. (ECF No. 16 at PageID.158.)  Plaintiff was thus terminated for "fraud and abuse of FMLA leave due to intentionally misleading the company regarding [his] absences . . . ." (ECF No. 16-6.)

The termination was then upheld by an arbitrator, who concluded that there was "no doubt that [LaBelle] did not use his FMLA leave" in accordance with his doctor's restrictions or "in accordance with the purposes of the law." (ECF No. 16-7 at PageID.192.)

## II.   PROCEDURAL POSTURE & LEGAL FRAMEWORK

LaBelle filed a three-count Complaint in this Court on December 28, 2017. (ECF No. 1) Cliffs answered the complaint, (ECF No. 4), but then, fairly early in the discovery process, it filed for summary judgment. (ECF No. 13.) Plaintiff responded to the motion[1], (ECF No. 19) and Cliffs replied. (ECF No. 21.)

Summary judgment is appropriate only if the evidence on the record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter

---

[1] Plaintiff devotes a portion of his response brief to Cliffs' alleged failure to seek concurrence before filing the motion for summary judgment. (*See* ECF No. 19 at PageID.212–13.) However, when the parties submitted their joint status report to the Court, Cliffs indicated that it would file for summary judgment, and Plaintiff indicated that he would oppose the motion. (ECF No. 8.) Cliffs was not required to file a separate certificate. *See* W.D. Mich. L. Civ. R. 7.1(d) (requiring a separately-filed certificate of concurrence for non-dispositive motions). Thus, Cliffs has not violated the Court's local rules.

of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (citing *Anderson*, 477 U.S. at 249).

The party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. In other words, the non-moving party cannot defeat a properly-supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to

judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353–54.

In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## III. ANALYSIS

LaBelle proceeds in three counts against Cliffs—two claims arise under the Family and Medical Leave Act, and the third arises under Michigan's Persons With Disability Civil Rights Act. Cliffs has moved for summary judgment on all claims, so the Court will take each in turn. However, there is one preliminary matter to resolve prior to the merits of the claims.

Plaintiff suggests that summary judgment is premature because no depositions had been taken by the time the motion was filed. A party "has no absolute right to additional time for discovery[.]" *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 409 (6th Cir. 1998). But under Rule 56(f), a motion for summary judgment can be filed at any time until 30 days after the close of all discovery.

After a motion for summary judgment is filed, it is non-moving party's burden to show by affidavit or declaration—with specific reasoning—that the Court should delay ruling on the motion for purposes of continued discovery. Fed. R. Civ. P. 56(f). It requires identifying "facts essential to justify [the] opposition" that are not currently in the record for lack of discovery. Fed. R. Civ. P. 56(f). "Where . . . a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified." *Emmons v.*

*McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989) (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)).

Here, Plaintiff argues in a conclusory fashion that "full discovery" is required before he will be able to adequately respond to the motion for summary judgment and that "it would be an abuse of discretion" for the Court to rule on a motion for summary judgment prior to the close of discovery. (PageID.213.) The Court disagrees for several reasons.

First, Plaintiff's counsel's affidavit is woefully insufficient. Rather than setting forth specific facts that Plaintiff expects to learn in discovery and elaborate on how the newly-discovered facts will help defend on summary judgment, counsel merely asserts that "discovery is still ongoing. No depositions have been conducted and Plaintiff's First Discovery Requests have yet to be answered by Defendant." (ECF No. 19-11.) The affidavit is plainly inadequate under even a cursory reading of Rule 56(f), and this alone is grounds to deny the request. *See Emmons*, 874 F.2d at 356–57 (affirming summary judgment due to lack of adequate Rule 56(f) affidavit).

Second, Plaintiff advances claims that have already been submitted in arbitration. Thus, he has already had an opportunity to cross-examine several of the pertinent witnesses under oath in a trial-like environment. He also has within his possession the pertinent emails sent by Cliffs management, in addition to his FMLA and personnel files. While certainly Plaintiff would prefer to defend the summary judgment motion with deposition transcripts in hand, he cannot credibly claim that he is in the dark as to the facts and circumstances of the termination of his employment.

Accordingly, for the reasons just described, Plaintiff's motion (taken from ECF No. 19) to delay a ruling on Cliffs' motion for summary judgment is **DENIED.** The Court will now proceed to the merits of Plaintiff's claims under the Family and Medical Leave Act and the Michigan Persons with Disabilities Civil Rights Act.

### A.

The FMLA entitles an eligible employee to a total of 12 weeks leave per year "[b]ecause of a serious health condition that makes the employee unable to perform the functions" of their position. 29 U.S.C. § 2612(a)(1)(D). The Act prohibits employers from interfering with an employee's use of FMLA leave or retaliating against an employee who exercises her rights under the Act, and it provides a private cause of action to employees to vindicate violations. 29 U.S.C. § 2615; *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). LaBelle raises claims for both FMLA interference and retaliation.

To prevail on a claim for FMLA interference LaBelle must show that: (1) he was an eligible employee; (2) Cliffs was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) Cliffs denied him FMLA benefits to which he was entitled. *See Donald v. Sybra*, 667 F.3d 757, 761 (6th Cir. 2012).

Retaliation cases proceed under a different analysis. In cases involving indirect evidence, as here, the familiar *McDonnell-Douglas* burden-shifting framework applies. *Seeger*, 681 F.3d at 283. Thus, the employee must first establish a prima facie case of FMLA retaliation by a preponderance of the evidence. *Id.* (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). To pass this first hurdle, LaBelle must show that (1) he availed

himself of a protected right under of the FMLA by notifying his employer of his intent to take leave; (2) his employer had knowledge of the intent to take leave; (3) he suffered an adverse employment action; and (4) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Id.* "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Id.* (quoting *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007).

While LaBelle has presented his interference and retaliation claims as stand-alone causes of action, it is apparent to the Court that the "essence of [his] claim is retaliation, not interference with substantive FMLA rights[,]" so his FMLA claims should be merged and analyzed under the retaliation framework. *Seeger,* 681 F.3d at 282. In other words, because LaBelle claims that Cliffs terminated him for "calling in FMLA [leave] for non-FMLA reasons, fraudulent . . . misuse of the leave of absence policy, . . . and causing falsification of the company's records," the claim is properly analyzed under the retaliation framework. *Id.* In such cases, the employer has not "shortchange[d] . . . leave time, den[ied] reinstatement, or otherwise interfere[d] with [the employee's] substantive FMLA rights." *Id.* (quoting *Stallings v. Hussmann Corp.,* 447 F.3d 1041 (8th Cir. 2006)). Here, as in *Stallings,* it appears that:

> [Cliffs] granted every request [LaBelle] made to take FMLA leave; therefore, [LaBelle] has failed to establish that [Cliffs] denied him a benefit to which he was entitled because he received all of the FMLA leave he requested . . . . Second, [Cliffs] never impeded [LaBelle's] use of FMLA leave. Third, only

after [LaBelle] returned from FMLA leave did [Cliffs] question whether [LaBelle] fraudulently used his FMLA leave and fire [him].

*Stallings*, 447 F.3d at 1051. Thus, because Plaintiff only alleges that Cliffs interfered with his FMLA leave "by following him, acting hostile towards him for taking the leave, and ultimately terminating him[,]" the claim should be analyzed as one for retaliation.[2]

Under the retaliation framework, even assuming LaBelle can meet his prima facie burden, Cliffs is entitled to summary judgment. Step two of the framework requires Cliffs to articulate a legitimate and non-discriminatory reason for terminating LaBelle. *Seeger*, 681 F.3d at 283–84. Cliffs set forth its legitimate reason in a lengthy termination letter to LaBelle:

> The reason for your termination is fraud and abuse of FMLA leave due to intentionally misleading the company regarding your absences and fraudulent receipt of profit sharing credits.
>
> * * *
>
> The Company is unable to conclude that your absences from work on June 19-21 and July 11-12 were medically necessary. There is no evidence to suggest

---

[2]    Even if the Court analyzed LaBelle's interference claim under that separate framework, summary judgment would be warranted. Interference claims require a plaintiff to show that his employer denied FMLA benefits *to which he was entitled*. *Donald*, 667 F.3d at 761 (citations omitted and emphasis added).

Thus, LaBelle must show he was entitled to take leave from June 19-21 and July 11-12 of 2017. Specifically, he needed to present evidence that he suffered from a "serious health condition that ma[de] [him] unable to perform the functions" of his job. 29 U.S.C. § 2612(a)(1)(D); *see also* 29 C.F.R. § 825.112(a)(4). But because LaBelle admitted in his written statement that he took leave whenever was most convenient for his personal life, and because there is no evidence in the record that a shoulder flareup on those dates rendered him unable to perform his duties, there is no genuine dispute of fact for trial and the interference claim fails. *See, e.g.*, *Tillman v. Ohio Bell Telephone Co.*, 545 F. App'x 340, 355 (6th Cir. 2013) (affirming summary judgment on interference claim where employer surreptitiously recorded its employee performing activities incompatible with his "serious medical condition," and plaintiff had not offered evidence that his condition rendered him unable to work on the dates of his leave).

that you were suffering from a flare-up on either occasion or even that you had been working so much that you needed a break. Indeed you could not recall anything unusual about either of these absences. We are therefore terminating your employment.

(ECF No. 16-6.) In this litigation, Cliffs asserts largely the same rationale for LaBelle's termination, and notes that "[f]raud and dishonesty constitute lawful, non-retaliatory bases for termination." (ECF No. 14 at PageID.54 (quoting *Seeger*, 681 F.2d at 284).)

Accordingly, the burden shifts back to LaBelle to demonstrate that Cliffs' justification for terminating his employment was pretextual. *Id.* at 285. A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). "Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [] intentionally discriminated against him." *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (citation and internal quotation marks omitted).

Plaintiff first baldly claims that the reasons given for his discharge were pretextual because Cliffs was "tired of employees taking FMLA leave." He asserts that Cliffs "lacked [an] honest belief that Plaintiff was misusing his FMLA." (ECF No. 19 at PageID.218.)

As Plaintiff explains, an employer's non-discriminatory basis for an adverse employment action is considered honestly-held if the employer could show "reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). However, Plaintiff fails to explain

why Cliffs could not reasonably rely on his own admission that he planned his FMLA leave in advance without regard for whether he was experiencing a flareup or his admission that, because his shoulder always hurt, he thought he could use his FMLA leave "as [he] wished."

The cases Plaintiff cites as support do not aid his argument. First, in *Tillman v. Ohio Bell Telephone Co.*, the Sixth Circuit discussed the honest belief rule as it applied to both retaliation and interference claims. 545 F. App'x 340 (6th Cir. 2013). While assessing the reasonableness of the employer's belief, the *Tillman* court noted: (1) that the employee would often strategically request FMLA leave to create three or four day weekends; (2) that the employee would often request leave in advance despite his own doctor indicating that his need for leave would be unpredictable; (3) that the employer had video of the employee performing recreational activities that contradicted his need for leave. *Id.* at 350. All of these factors are also present in this case and support application of the honest belief rule.

However, the *Tillman* court also noted that the employer had relied on the opinion of an independent physician who concluded that the video activities were inconsistent with FMLA limitations. *Id.* Plaintiff hangs his hat on this factual distinction because Cliffs did not seek any independent medical guidance after recording LaBelle playing golf. The company instead relied on its own assessment that golfing was inconsistent with their understanding of LaBelle's shoulder flareups. According to Plaintiff, any employer who does not independently verify their suspicions by referring to a physician cannot invoke the honest belief rule.

But the problem is that LaBelle already admitted that he suffered from shoulder pain every day, and that he utilized his FMLA without regard for whether or not a flareup

rendered him unable to work. While perhaps the best practice is for employers to seek an independent medical opinion, Cliffs' reliance Plaintiff's own description of his condition was eminently reasonable. Given Plaintiff's admission and the other factors described in *Tillman*, no reasonable juror could find that Cliff acted unreasonably by relying on the particularized facts at hand when it made the decision to terminate Plaintiff's employment.[3]

Plaintiff also argues that emails between Rasmussen and Cliffs' HR Department and a spreadsheet documenting LaBelle's absences (ECF No. 19-10) are indicative of pretext. It is unclear whether Plaintiff is proceeding under the theory that Cliffs' proffered reasons (1) have no basis in fact or (2) did not actually motivate the action.

Under either theory, Plaintiff has not produced evidence from which a reasonable juror could reject Cliffs' legitimate, nondiscriminatory justification. While Rasmussen's emails "might have been more politic," as the arbitrator put it, they contain no statements from which a reasonable juror could conclude that LaBelle's invocation of the FMLA itself "played a part in the adverse employment action." *Wisbey v. Lincoln*, 612 F.3d 667, 676 (8th Cir. 2010).

Rasmussen only became suspicious of LaBelle after noting how LaBelle used his FMLA leave to bridge between other time away from work, when his FMLA leave was

---

[3]     Plaintiff also analogizes to *Yontz v. Dole Fresh Vegetables*, an unpublished case arising out of the Southern District of Ohio, in which the district court rejected an employer's attempt to invoke the honest belief rule. No. 3:13-cv-066 (S.D. Ohio Oct. 10, 2014). *Yontz* bares little resemblance to this matter because there, the employer claimed that the employee was not approved to take FMLA leave to care for his daughter who suffered from Down-syndrom, despite possessing an FMLA certification explicitly allowing for such leave. The *Yontz* court thus held that the employer could not assert the honest-belief rule because it did not make a reasonably informed and considered decision before terminating the employee.

intended to be limited to periods in which LaBelle experienced flareups. And as the arbitrator noted in his decision, Cliffs was interested in tracking leave of persons with attendance problems, who were thought to be somehow abusing the system because it lost thousands of man-hours per month to FMLA leave. This interest does not cross the line from legitimate workplace policy and into retaliation. Cliffs took no adverse action against Labelle until it learned—by his own admission—that he was taking intermittent FMLA leave every month, without regard for whether a flareup left him unable to work and to create a more flexible schedule for himself that allowed him to make his golf league, extend his vacations, and generally maximize his time away from work. *See, e.g., Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894 (S.D. Ohio 1999) (rejecting similar pretext arguments after concluding that the employer had an honestly-held belief that employee had abused FMLA leave and terminated her on that basis).

In sum, when placed in the proper context, Plaintiff has not proffered evidence from which a reasonable juror could conclude that Cliffs bore a discriminatory animus towards him for his *use* of FMLA leave; the only rational conclusion that can be drawn from the evidence is that Cliffs discharged LaBelle for his *abuse* of the FMLA system. Summary judgment is thus warranted on LaBelle's FMLA claims.

## B.

Plaintiff's claim under the Michigan Persons with Disabilities Civil Rights Act suffers from the same fatal flaw. Like his claims under the FMLA, Plaintiff relies on indirect evidence to support his state law claim, and the *McDonnell-Douglas* burden shifting

framework applies. *See Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014).[4]

But as the Court has already explained, even assuming LaBelle can make his prima facie case, he has not met his ultimate burden by proffering evidence from which a reasonable juror could conclude that Cliffs' legitimate and nondiscriminatory reason for terminating his employment was pretext. The Court will thus grant summary judgment to Cliffs on Plaintiff's state-law claim.

## IV.   CONCLUSION

In sum, the Court will grant Cliffs' summary judgment motion because even in the light most favorable to Labelle, he is unable to rebut his employer's legitimate and nondiscriminatory rationale for terminating his employment. Thus, there is no genuine dispute of fact for trial.

---

[4]      To establish a viable claim, LaBelle must establish a prima facie case of discrimination by presenting evidence that: (1) he is disabled as defined by the act or that the defendant regarded him as disabled; (2) the alleged disability is unrelated to his ability to perform the job; and (3) he was discriminated against in one of the ways described by the statute, such as being discharged because of a disability. *Lown v. JJ Eaton Place*, 235 598 N.W.2d 633, 636 (Mich. Ct. App. 1999); *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 405–06 (Mich. Ct. App. 1999).

## ORDER

For the reasons contained in the accompanying Opinion, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 13).

IT IS FURTHER ORDERED that Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

JUDGMENT TO ENTER SEPARATELY.

**IT IS SO ORDERED**.

Date:   <u>November 27, 2018</u>                    /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge